IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Elaine Fleming, | Civil Action No. 2:14-cv-2144-TMC-MGB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | **OF MAGISTRATE JUDGE** |
| Defendant. | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Elaine Fleming, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff has also filed a Motion to Remand. (See Dkt. No. 19.)

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 45 years old on her alleged disability onset date of October 30, 2010. (R. at 24, 36.) She alleged disability due to, *inter alia*, lumbar degenerative facet arthropathy, a stroke, diabetes mellitus, and depression. (See R. at 26, 185.) Plaintiff has a G.E.D. and past relevant work as a cleaner, fast food cook, laborer, and production helper. (R. at 35, 49.) Her applications were denied initially and on reconsideration. (R. at 24.) After a hearing before an Administrative Law Judge (ALJ) on July 17, 2012, the ALJ issued a decision on March 7, 2013, in which the ALJ found that Plaintiff was not disabled. (R. at 24-37.) The Appeals Council denied Plaintiff's request for review

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> (2) The claimant has not engaged in substantial gainful activity since October 30, 2010, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> (3) The claimant has the following severe impairments: lumbar degenerative facet arthropathy, diabetes mellitus and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) lift 20 pounds occasionally, 10 pounds frequently, sit six of eight hours, stand six of eight hours and walk six of eight hours, except she can only occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but should never climb ladders, ropes or scaffolds. The claimant can frequently handle and finger with her left upper extremity. The claimant should avoid concentrated exposure to hazards including unprotected height and dangerous machinery. The claimant is limited to one-to-two step tasks due to her mental impairments.
>
> (6) The claimant is capable of performing past relevant work as a cook, laborer and production worker as she performed these jobs. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).[2]

---

[2] The Commissioner made "alternative findings for step five of the sequential evaluation process," concluding that "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." (R. at 36.)

>  (7)  The claimant has not been under a disability, as defined in the Social Security Act, from October 30, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

## SOCIAL SECURITY DISABILITY GENERALLY

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that supplemental security income (SSI) disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. See 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work

---

[3] "[T]he definition of disability is the same under both DIB and SSI . . . ." Mason v. Colvin, Civ. A. No. 9:12-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing Emberlin v. Astrue, Civ. A. No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

3

within the meaning of the Act. 42 U.S.C. § 423(d)(5);  42 U.S.C. § 1382c(a)(3)(H)(I).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

## DISCUSSION

Although Plaintiff has presented several issues for the court's review, because the undersigned recommends granting Plaintiff's Motion to Remand (Dkt. No. 19), that motion is addressed first. Plaintiff seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g) in light of a January 6, 2015 opinion of Dr. Patel, Plaintiff's treating physician, and a November 26, 2014 "EMG and nerve conduction studies." (See Dkt. No. 19-1 at 1-2.) In sentence six of 42 U.S.C. § 405(g), Congress provided a mechanism for a court's consideration of new information that is not part of the certified administrative record. See 42 U.S.C. § 405(g) (sentence six). Sentence six remand is appropriate when a plaintiff submits new evidence and further shows that: (1) the new evidence is material to her alleged disability; and (2) she had good cause for failing to submit the evidence earlier. See 42 U.S.C. § 405(g) (sentence six: a court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record"); see also Fagg v. Chater, 106 F.3d 390, 1997 WL 39146, at *2 (4th Cir. 1997) (unpublished table decision) ("[The plaintiff] must satisfy three prerequisites to merit a remand on the basis of newly discovered evidence: (1) the evidence must be new; (2) it must be material; and (3) there must be 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" (quoting 42 U.S.C. § 405(g))).

"Evidence is new . . . if it is not duplicative or cumulative," and "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). "Courts have held that the Social Security Act has a remedial purpose and that the term 'good cause' should be construed liberally." Bright v. Astrue, Civ. A. No. 2:11-cv-01815–RBH, 2012 WL 3637734, at *5 (D.S.C. Aug. 22, 2012) (citing Goff v. Harris, 502 F. Supp. 1086, 1089 (E.D. Va. 1980)); see also Richmond v. Chater, 94 F.3d 263, 268 (7th Cir. 1996) ("The prototype of a sentence six remand would be a case in which relevant new evidence had come to light since the agency's decision under appeal, and the parties asked the district court to remand the case to allow the agency to consider the case further in light of the new evidence, so that when the appeal resumed the court would have the benefit of the agency's consideration of all the relevant evidence.").

Plaintiff attached the January 6, 2015 statement of Dr. Patel as well as the results of her November 26, 2014 nerve conduction study and EMG to her Motion to Remand. (See Dkt. No. 19-2.) Dr. Patel stated,

> I saw Elaine Fleming in 2012 for a couple visits. She complained [of] pain in her back and legs. I saw her once in June and once in July 2012, and then I saw her 6/12/14 again for back and leg pain. When I first saw her in 2012 she was unstable on her feet. **We thought she had suffered a stroke at some point in the past and this was probably causing her left sided weakness**. I noted some minimal weakness on the left side when she first came in. When I saw her again this year she was having the same types of problems although I did not note the same weakness on clinical examination. I have reviewed the results of a nerve conduction study that were provided to me. **Her nerve testing does correlate with her complaints of weakness that she has had all along**. It also correlates with her complaints of back and leg pain. Based on the results of her nerve testing and my prior experience with her, it is most probable she was limited to no more than sedentary work as of at least June 2014 and probably at some point before that. Also, it is consistent with her condition that she would need to change positions frequently between sitting and standing due to her back and leg pain. It is consistent with her condition that she would need to change positions at least once every 30 minutes. The last time I saw her she mostly had back pain. She probably has a pinched nerve in her back based on the findings of the nerve conduction study. I have also treated her for her diabetes, hypertension, anxiety and depression. She has appeared anxious and depressed at times. It is consistent with her condition that between her back and leg pain and her anxiety she would experience frequent interruptions to her concentration.

(Dkt. No. 19-2 at 1 of 7 (emphasis added).)

5

Plaintiff asserts that remand is warranted because the evidence submitted with her Motion to Remand is new and material, and because she had good cause for failing to submit it at the administrative level. (See Dkt. No. 19-1 at 2-3 of 4.) Plaintiff contends the evidence is new because "[i]t only came into existence after the administrative record was closed." (Id. at 2.) She asserts that she has good cause for failing to present the evidence while the administrative record was open, as she "testified that she was without insurance and was unable to obtain the diagnostic tests needed to confirm her allegations." (Id. at 3.) Finally, Plaintiff contends the evidence is material, and warrants remand for review by the Commissioner, because "[t]he new diagnostic tests and Fleming's treating physician's opinion . . . support Fleming's allegation of prior stroke activity." (Id.)

In opposing Plaintiff's motion, Defendant argues that Dr. Patel's opinion "is not 'material' because if the ALJ had considered it, he would not have changed his decision." (Dkt. No. 22 at 22.) According to Defendant, "[b]ecause the ALJ already considered and properly discounted Dr. Patel's extreme assessments, consideration of his redundant 2015 opinion would not have impacted the ultimate decision." (Id. at 23.) Defendant further asserts the evidence is not material because it does not relate to the relevant time period. (Id.)

After carefully reviewing the ALJ's decision, the parties' arguments, and the evidence submitted with Plaintiff's Motion to Remand, the undersigned recommends granting Plaintiff's motion (Dkt. No. 19.) The Commissioner does not take issue with Plaintiff's assertion that the evidence is new and that Plaintiff had good cause for failing to submit it at the administrative level, nor does the undersigned. The results of the nerve conduction studies and EMG, along with Dr. Patel's opinion that these tests support Plaintiff's "complaints of weakness that she has had all along," are not duplicative or cumulative. See Wilkins, 953 F.2d at 96. Furthermore, Plaintiff's assertion of good cause is meritorious; as Plaintiff notes in her motion, she testified that she did not go to the hospital or see a neurologist at the time she experienced her stroke because she did not have any insurance coverage. (R. at 58-59.)

The question remains, then, whether this new evidence is material. In the opinion of the undersigned, the evidence is very material. Defendant is correct that the ALJ provided several reasons for discounting Dr. Patel's opinion. And it is true that the nerve conduction study was performed in November of 2014, after the relevant period. But what Dr. Patel's January 2015 opinion does is connect the November 2014 test results to the relevant period; Dr. Patel's opinion provides the "inference of linkage" between the November 2014 test results and the relevant period. See Bird v. Comm'r, 699 F.3d 337, 341 (4th Cir. 2012).

What cannot be ignored in the case *sub judice* is the fact that the ALJ discounted Plaintiff's allegation of stroke because she had no diagnostic test results to support her allegation. In concluding that Plaintiff's "light stroke" was not a severe impairment, the ALJ stated,

> Although the claimant reported that she had a "light stroke" in October 2010, she did not go to the emergency room because she had no insurance. The undersigned notes there is no evidence in the record that confirms the claimant had a stroke, nor has she received ongoing medical care for a stroke.

(R. at 27.) The ALJ also used the lack of "diagnostic tests to establish a stroke" to reject a portion of the opinion of Dr. Early, a state examiner. (See R. at 34.) The ALJ stated, *inter alia*,

> Some weight is given the opinion of consultative examiner Dr. Early (Exhibit 3F), that the claimant has some limitations due to her impairments, but she did not posture in a manner consistent with severe pain during the examination. **However, the undersigned noted that Dr. Early's opinion that the claimant had a stroke in January 2011, as well as the need for a cane, is not fully supported by the medical record**. His opinion is inconsistent with Dr. El-lbiary. **There are no diagnostic tests to establish a stroke**. . . .

(R. at 34 (emphasis added).)[4] The ALJ concluded that Plaintiff had the following residual functional capacity:

---

[4] Dr. Early stated, *inter alia*,
> I think this lady had a stroke in January. I do not know why she did not go to a doctor. She has significant weakness on the left body and I do not think it is embellishment. She has hyperreflexia in the left knee. She has rigidity in the left arm. I think she had a stroke. I do not know why this would make her to have 10/10 pain in the left body. She did not posture in a manner consistent with severe pain during our exam.

(R. at 279.) Dr. El-lbiary stated that Plaintiff's "allegation of stroke is not *fully* supported by the record." (R. at 291 (emphasis added).) He, too, relies on the fact that Plaintiff did not go to the emergency room after her reported stroke. (See R. at 287-88.)

7

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) lift 20 pounds occasionally, 10 pounds frequently, sit six of eight hours, stand six of eight hours and walk six of eight hours, except she can only occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but should never climb ladders, ropes or scaffolds. The claimant can frequently handle and finger with her left upper extremity. The claimant should avoid concentrated exposure to hazards including unprotected height and dangerous machinery. The claimant is limited to one-to-two step tasks due to her mental impairments.

(R. at 29.)

A fair reading of the ALJ's decision indicates the ALJ concluded that Plaintiff's "light stroke" did not "result in any significant limitation[] on her ability to do basic work-related activities" because–essentially–she had no diagnostic proof that she suffered a stroke. (See R. at 27; see also R. at 47-49.)[5] The ALJ further stated, "[T]he evidence shows that [Plaintiff] is able to move about in a satisfactory manner, with no muscle weakness or loss of control due to nerve damage." (R. at 32.) Plaintiff now attempts to offer that proof, and in light of Dr. Patel's opinion connecting the results of the diagnostic tests to the relevant period, the undersigned is of the opinion that the at-issue evidence is indeed material. Accordingly, the undersigned recommends that Plaintiff's Motion to Remand (Dkt. No. 19) be granted.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court recommends that Plaintiff's Motion to Remand (Dkt. No. 19) be granted, and that the case be remanded to the Commissioner pursuant to sentence six of 42 U.S.C. Section 405(g) for further consideration.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 20, 2015
Charleston, South Carolina

---

[5] It appears that all medical sources who actually examined Plaintiff concluded she suffered a stroke. (See R. at 346, 279, 338.)